## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| CHARLES EDWARD CAFFEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14-cv-02640-TMP |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER REMANDING CASE PURSUANT TO 42 U.S.C. § 405(g)

Before the court is plaintiff Charles Edward Caffey's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* On May 25, 2017, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 12.) For the reasons set forth below, the decision of the Commissioner is reversed and the action is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL HISTORY

On December 16, 2010, Caffey applied for disability insurance benefits under Title II of the Act. (R. at 102.) Caffey alleged disability beginning on August 10, 2003, due to

residual back problems from a herniated disk. (R. at 102, 179, 183.) Caffey's application was denied initially and upon reconsideration by the Social Security Administration ("SSA"). (R. at 22.) At Caffey's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 1, 2012. (Id.) On May 23, 2012, the ALJ issued a decision denying Caffey's request for benefits after finding that Caffey was not under a disability because he retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. at 22-30.) On July 20, 2014, the SSA's Appeals Council denied Caffey's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on August 18, 2014, Caffey filed the instant action. (ECF No. 1.) Caffey argues that (1) the ALJ erred by improperly weighing the opinion of Caffey's treating physician, Dr. Forest Robinson; and (2) the ALJ's finding that Caffey has the RFC to perform a significant number of jobs in the national and local economy is not supported by substantial evidence. (ECF No. 8 at 6-8.)

## II.  CONCLUSIONS OF LAW

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the

3

record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B. The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,

4

engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits.  Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011).  The initial burden is on the claimant to prove she has a disability as defined by the Act.  Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).  If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations.  See 20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be engaged in substantial gainful activity.  See 20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, a finding

must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C.  The ALJ's Assessment of the Treating Physician's Opinion

Caffey argues that the ALJ erred by giving no weight to the

6

opinion of his treating source,[1] Dr. Forrest Robinson. (ECF No. 8 at 7.) Dr. Robinson treated Caffey from October 7, 2008 through January 5, 2009. (R. at 25, 269.) He reported to the ALJ that Caffey suffered from "compression neuropathies" resulting from his disk injury as well as from chronic pain that medication did little to ease. (R. at 269, 275.) As a result of these conditions, Dr. Robinson said that Caffey is "consistently subject to ice packs, pain killers and bed rest up to twenty-four hours" after engaging in light activity like yard work. (R. at 275.) While initially declaring Caffey "totally disabled" and incapable of gainful employment, Dr. Robinson later acknowledged that his "professional opinion regarding this patient is based primarily on subjective statements made by the patient" and explained that Caffey's financial limitations prevented further evaluation. (R. at 269, 275.)

The ALJ gave no weight to Dr. Robinson's opinion, explaining that "Dr. Robinson's conclusion cannot be accepted because it is inconsistent with the Claimant's activities of daily living," and "the final responsibility for deciding [disability] is reserved to the Commissioner." (R. at 29.) Caffey contends the ALJ violated procedural requirements by neglecting to apply mandatory criteria when deciding what weight

---

[1]The parties both describe Dr. Forrest Robinson as a treating source. (ECF Nos. 8, 9.)

to give Dr. Robinson's opinion.  (ECF No. 8 at 7-8.)

Treating sources are medical sources who have treated a claimant and have, or have had, an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). If an ALJ finds that a treating source's diagnostic techniques are medically acceptable and that the substantial evidence of the claimant's record accords with the treating source's medical opinion, than the ALJ will give that opinion "controlling weight."    20 C.F.R. §§ 404.1527(c)(2).    In the event the treating source's opinion does not meet these requirements and, therefore, does not merit controlling weight, the ALJ must apply a set of regulatory factors to determine what weight to give the opinion.  Id.  Those factors include the length and nature of the treatment relationship, the frequency of exams, the evidence upon which the physician bases her or his opinion, the opinion's consistency with the record as a whole, whether the physician is practicing in an area where she or he has specialized, and any other relevant factor, like the physician's familiarity with the claimant's full medical record.   20 C.F.R. §§ 404.1527(c)(2)-(6).

Though the Sixth Circuit emphasizes that ALJs must apply all of these factors, it has recognized three instances where it amounts to harmless error even though an ALJ failed to apply the factors to the treating source's opinion.  See Wilson v. Comm'r

8

of Soc. Sec., 378 F.3d 541, 546–47 (6th Cir. 2004). The first is if the treating source's opinion is "so patiently deficient that the Commissioner could not possibly credit it." Id. The second is if the "Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion." Id. The third is if the ALJ met the "goal of § 1527(d)(2)" by fully assessing the value of the treating source's opinion without explicitly applying all of the factors. Id.

In addition to specifying how to evaluate medical opinions, the Code of Federal Regulations draws an important distinction between medical opinions and conclusory opinions. 20 C.F.R. § 404.1527(d). The ALJ should always apply the procedural factors to determine what weight to give a medical opinion. Id. But, when a physician opines on issues reserved to the Commissioner by, for example, announcing that a person is disabled, the Commissioner "will not give any special significance" to the physician's opinion on that issue. Id.; see also Curler v. Comm'r of Soc. Sec., 561 F. App'x 464, 472 (6th Cir. 2014). However, just because the physician impermissibly opines about a claimant's ability to work does not mean that the ALJ can cast aside the entirety of the physician's opinion. See Hall v. Comm'r of Soc. Sec., 148 F. App'x 456, 461–67 (6th Cir. 2005) (remanding a case because the ALJ failed to give good reasons for dismissing the treating physician's entire

9

opinion even though the doctor had improperly opined that the claimant was "totally disabled").

The Commissioner argues that because Dr. Robinson's opinion was conclusory it was not entitled to any weight and, thus, the ALJ did not need to apply the multi-factor analysis. (ECF No. 9 at 11.) This is true for the portion of Dr. Robinson's opinion that invaded the ALJ's purview. 20 C.F.R. § 404.1527(d). The ALJ did not have to give any weight to Dr. Robinson's statements that Caffey was "totally disabled" and could not be "gainfully employed." (R. at 269.) However, Dr. Robinson's opinion also contained medical opinions. Dr. Robinson diagnosed Caffey with "compression neuropathies;" detailed the nature, unpredictability, and severity of Caffey's symptoms; and stated that Caffey's pain impacts his ability to perform daily activities. (R. at 269, 275.) Thus, the ALJ had to comply with the regulatory requirements and determine what weight to assign to these medical opinions.

Here, the ALJ correctly chose not to give Dr. Robinson's opinion controlling weight but erred by not applying the multi-factor analysis to Dr. Robinson's medical opinions. Because Dr. Robinson based all of his opinions primarily on Caffey's subjective complaints, the ALJ provided good reason for deciding not to give Dr. Robinson's opinion controlling weight. Payne v. Comm'r of Soc. Sec., 402 F. App'x 109, 113 (6th Cir. 2010)

("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." (quoting Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001))). However, after determining that the Dr. Robinson's opinion did not merit controlling weight, the ALJ did not apply the multi-factor test to the opinion. The court will therefore consider whether the ALJ's decision falls into one of the three Wilson exceptions and amounts to harmless error.

Applying the first of the Wilson exceptions, this is not a situation where the treating source's opinion was "so patently deficient that the Commissioner could not possibly credit it." Wilson, 378 F.3d at 547. Dr. Robinson's opinion is confirmed by his own medical notes and corresponds with the evidence from Caffey's MRI. (R. at 212, 269–275.); cf. Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 837–38 (6th Cir. 2005) (upholding an ALJ's decision to give no weight to a medical opinion where the claimant's record contained no "office notes or other treatment records" from the doctor and the doctor's opinion lacked any objective basis whatsoever to support it).

The ALJ's treatment of Dr. Robinson's opinion also does not fall into the second Wilson exception: implicit adoption. Wilson, 378 F.3d at 547. The ALJ explicitly rejected Dr. Robinson's opinion. (R. at 29.)

The only remaining exception is the third: the ALJ comported with the goal of the regulatory requirements if not the letter of them.  Wilson, 378 F.3d at 547.  The Commissioner contends that this is the case and that the ALJ implicitly applied two of the factors when he noted that Dr. Robinson's opinion was inconsistent with Caffey's daily activities and identified the subjective basis of the opinion.  (ECF No. 9 at 12.)  When applying the third Wilson exception, the Sixth Circuit has permitted ALJ decisions to stand even though the ALJ applied less than the full set of factors.  Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 630 (6th Cir. 2016) ("[T]he ALJ gave good reasons for discounting Dr. Chapman's opinion, and satisfied the mandates of 20 C.F.R. § 404.1527 by considering some of the listed factors . . . .");  Pasco, 137 F. App'x at 837–38.  Nevertheless, the ALJ still had to apply those factors in a reasoned fashion spelled out in the opinion.  Morr v. Comm'r of Soc. Sec., 616 F. App'x 210, 211 (6th Cir. 2015) ("If an ALJ decides to give a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating source's opinion and the reasons for that weight." (quoting Wilson, 378 F.3d at 544)).  Here, the ALJ's treatment of the two factors that he did apply falls short of the goal of the procedural regulation

12

because the ALJ did not provide a fully reasoned analysis.

The ALJ's finding of inconsistency between Dr. Robinson's opinion and Caffey's daily activities is an insufficient basis for disregarding the opinion. The Sixth Circuit has held several times that an "ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding." Cole, 661 F.3d at 939 (citing Johnson v. Comm'r Soc. Sec., 652 F.3d 646, 652 (6th Cir. 2011)). Caffey's testimony contradicts the ALJ's finding. The ALJ noted that Caffey can engage in "activities of daily living, which include yard work, housework, daily exercise, driving, ironing and shopping." (R. at 28.) This commentary mischaracterizes the many limitations that Caffey laid out both in his testimony and in his questionnaire responses. Caffey conceded that he is capable of doing yard work but clarified that it causes him pain in his back and right hip to do it. (R. at 165.) With regard to the household chores, Caffey acknowledged he was responsible for them but explained "it doesn't get done, my house is a mess." (R. at 47.) He also explained that when he does wash dishes he has to rest or lie on his back afterwards and that he can cook on a good day but, even then, can only stand long enough to make simple meals like a frozen dinner. (R. at 151,

13

160, 192, 202.) When discussing exercise, Caffey specified that the exercise consisted of ice packs, stretching, and "two different size balls," hardly a rigorous workout. (R. at 44.) With regard to shopping, Caffey consistently reported that he could only do it on a good day. (R. at 44, 151, 160.). Furthermore, he stated that he could only shop at night when there were no lines and that he had trouble with heavy grocery bags. (Id.) All of Caffey's explanations correspond with Dr. Robinson's medical opinion that Caffey's "daily activities are only accomplished through pain." (R. at 275.) Thus, Dr. Robinson's opinion was consistent with evidence of Caffey's activities.

Dr. Robinson's opinion of Caffey's physical condition does conflict with the opinions of the state consultants who noted that Caffey could do everything from stand for six hours to climb, balance, stoop, and crawl. (R. at 219-220.) However, it does not appear that the ALJ assessed the weight of the state consultant opinions, thus calling into question the ALJ's reliance on the state consultants' opinions over Dr. Robinson's opinion. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 379-80 (6th Cir. 2013) ("His failure to apply the same level of scrutiny to the opinions of the consultative doctors upon which he relied, let alone the greater scrutiny of such sources called for by 20 C.F.R. § 404.1527, further demonstrates that his

14

assessment of [the treating source's] opinions failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis."). For assessment of these opinions, the ALJ mentioned only that the state agency medical consultant opinions were supported by the record. (R. at 28.) The ALJ's failure to apply the multi-factor analysis to the state consultants' opinions lessens the probative value of any inconsistencies between the state consultants' opinions and Dr. Robinson's opinion.

With the inconsistency factor an unsound reason to disregard Dr. Robinson's opinion, the primarily subjective basis of Dr. Robinson's medical opinions remains as the single factor from the multi-factor test supporting the ALJ's decision to give Dr. Robinson's opinion no weight. In <u>McGlothin v. Commissioenr of Social Security</u>, the Sixth Circuit upheld an ALJ decision to disregard treating sources' medical opinions solely because of the subjective basis of the opinions. 299 F. App'x 516, 523 (6th Cir. 2008). However, in <u>McGlothin</u>, the Sixth Circuit pointed out that the ALJ had found the claimant's complaints to be "incredible." <u>Id.</u> In the present case, the ALJ found that, while "at times" Caffey's claims were exaggerated, Caffey's statements were also "generally credible." (R. at 27–28.) Consequently, because the ALJ found that the subjective complaints upon which Dr. Robinson based his medical opinion

were exaggerated but credible, the ALJ did not provide a sufficient basis for discounting Dr. Robinson's medical opinions. While there may be additional factors in the record upon which the ALJ could have relied when deciding to give Dr. Robinson's medical opinions no weight, "the requisite evidence and analysis must appear in the ALJ's decision, not simply be present in the rest of the record." Karger v. Comm'r of Soc. Sec., 414 F. App'x 739, 753 (6th Cir. 2011).

Because the ALJ has failed to provide good reasons for giving Dr. Robinson's opinion no weight, the ALJ's decision does not meet the procedural requirements of 20 C.F.R. § 404.1527(c), leaving the decision unsupported by substantial evidence. See Cole, 661 F.3d at 940 ("Our finding that the ALJ's decision is not supported by substantial evidence is based on the ALJ's violation of the agency's procedural rules."). Accordingly, it is ordered that the case be remanded so that the ALJ may comply with procedural requirements when determining what weight to give Dr. Robinson's opinion.

**D. The ALJ's RFC Determination**

Caffey asserts that the ALJ's determination that he has the RFC to perform light work is not supported by substantial evidence. (ECF No. 8 at 6.) A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must assess the

16

claimant's RFC based on all of the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996) ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004) (alteration in original)(quoting 20 C.F.R. § 416.920(a)(4)(iv)).

The ALJ found that, through the date last insured, Caffey

[H]ad the [RCF] to lift 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit 6 hours in an eight hour workday with frequent balancing, stooping, kneeling, crouching, crawling, and ramp/stair climbing and occasional ladder/rope/scaffold climbing while avoiding concentrated exposure to hazards, moving machinery and work at heights.

(R. at 26.) As a result of these findings, the ALJ determined that Caffey still had the RFC to "perform the full range of light work . . . ."[2] (R. at 30.)

---

[2] "Light work"

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves

Caffey argues this finding is unsubstantiated for two reasons. First, his treating physician reported to the ALJ that Caffey's disability rendered him incapable of working. (ECF No. 8 at 6.) Second, the ALJ neglected to consider the combined effect of Caffey's three impairments: lumbar spinal disorders, hypertension, and prostate cancer. (Id.)

As discussed above, ALJs are not obligated to give controlling weight to opinions that state that a claimant is disabled, regardless of their source. 20 C.F.R. §§ 404.1527(d)(1), 416.972(d)(1); see also Curler, 561 F. App'x at 472. Therefore, the ALJ correctly disregarded Dr. Robinson's opinion that Caffey was disabled.

Furthermore, the ALJ did consider the combined effect of Caffey's three impairments. When assessing whether a claimant is disabled, the ALJ must consider the "combined effect" of all of the claimant's impairments. 20 C.F.R. § 404.1523. This consideration must be more than "lip service" that does little more than acknowledge the presence of multiple impairments. Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 775-76

---

sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also SSR 83-10, 1983 WL 31251, at *5 (January 1, 1983).

(6th Cir. 2008) (citing Mowery v. Heckler, 771 F.2d 966, 970 (6th Cir. 1985)).  However, the ALJ may meet this requirement by analyzing each condition individually.  See Bledsoe v. Barnhart, 165 F. App'x 408, 410–11 (6th Cir. 2006) ("The ALJ described evidence pertaining to all impairments, both severe and non-severe . . . . The ALJ explicitly stated that he considered the combination of all impairments . . . ."); Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings.").  Here, the ALJ listed and described all three of Caffey's impairments and noted that Caffey did not have a "combination of impairments" that rendered him disabled. (R. at 24–26.)  Even if he had not considered the combined effect of the impairments, it is unclear from the record how the hypertension and prostate cancer might have impacted Caffey's ability to work.  Therefore, whether the ALJ had or had not considered the combined effect of the impairments would not have impacted the ALJ's ultimate determination.  For these reasons, the court upholds the ALJ's disregard of Dr. Robinson's conclusory opinions and assessment of the combined effect of Caffey's impairments when determining Caffey's RFC.

## III. CONCLUSION

For the foregoing reasons, the ALJ's decision is reversed, and this case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge


September 12, 2017
Date